IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CSX TRANSPORTATION, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Case No. 3:14-mc-00079-MJR-PMF |
| | ) |
| AUBURN THIRTY SIX, LLC | ) |
| and MICHAEL GOLDSTEIN, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

**FRAZIER, Magistrate Judge:**

Before the Court is the Motion to Compel filed by plaintiff CSX Transportation, Inc. ("CSX"). CSX's motion to compel is hereby GRANTED. Defendants' objections that assert the privilege against self-incrimination under the Missouri Constitution are OVERRULED. Defendants' objections that assert the privilege against self-incrimination under the Fifth Amendment to the United States Constitution are also OVERRULED. However, the Defendants may reassert the Fifth Amendment privilege by submitting the documents in question to the Court within 14 days for *in camera* review. The Court will defer ruling on the CSX's request for attorney's fees so as to allow the defendants to reassert the Fifth Amendment privilege.

## BACKGROUND

CSX initially filed suit against defendants Auburn Thirty Six, LLC ("Auburn") and Michael Goldstein ("Goldstein") in the United States District Court for the Eastern District of Missouri on October 24, 2012. See *CSX Transp., Inc. v. Auburn Thirty Six, LLC*, No. 4:12-CV-1984-JAR, 2014 WL 2480610 (E.D. Mo.). Auburn had entered into an agreement with CSX

where Auburn purchased a number of railroad cars on credit. Goldstein is the president and owner of Auburn and he personally guaranteed the agreement. Auburn failed to pay CSX for the railcars and CSX filed a breach of contract suit in the Eastern District of Missouri. The matter proceeded under the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. On June 3, 2014 a judgment was entered in favor of CSX and against Auburn and Goldstein in the amount of $820,423.64. The judgment was later amended on July 8, 2014 to award CSX attorney's fees, costs and prejudgment interest, for total of $973,990.55.

     CSX then initiated efforts to collect the judgment. CSX states in its motion to compel that it soon became aware that Goldstein transacted business within the geographic territory encompassed by the Southern District of Illinois. Specifically, Goldstein opened bank accounts with Liberty Bank, a financial institution headquartered in Alton, Illinois. On November 5, 2014 the amended judgment from the Eastern District of Missouri was registered in the Southern District of Illinois (Doc. 1) and CSX began to conduct proceedings in aid of execution in this district pursuant to Rule 69 of the Federal Rules of Civil Procedure.

     On May 4, 2015 CSX served Goldstein with a request for production, along with a notice of deposition to Goldstein and his son. On June 4, 2015 Goldstein responded to the request for production by refusing to answer any of the requests. Goldstein raised several objections to the requests, including that he was asserting his right against self-incrimination under Article 19 of the Missouri Constitution, that he was asserting his right against self-incrimination under the U.S. Constitution and that venue is improper in the Southern District of Illinois. Goldstein also objected that the requests are vague, ambiguous, overly broad and unlikely to lead to the discovery of assets upon which the plaintiff may execute.

On June 10, 2015 CSX filed its motion to compel and on June 24, 2015 Goldstein filed his response in opposition.

## ANALYSIS

Goldstein argues that he is entitled to assert the privilege against self-incrimination as set forth in the Missouri Constitution. The underlying judgment in this case was originally entered in the Eastern District of Missouri and registered in the Southern District of Illinois pursuant to 28 U.S.C. § 1963. Under 28 U.S.C. § 1963,

> A judgment in an action for the recovery of money or property entered in any … district court … may be registered by filing a certified copy of the judgment in any other district … when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. … A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963. Rule 69(a) of the Federal Rules of Civil then sets forth the proceedings for collecting the judgment,

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies … In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a).

Pursuant to Rule 69(a), supplemental proceedings must accord with the procedure of the state where the court is located. Therefore, Goldstein is not entitled to the privilege against self-incrimination as set forth in the Missouri Constitution because this matter is currently proceeding in the Southern District of Illinois. Illinois procedural rules apply to this supplemental proceeding and Goldstein does not city any Illinois conflict of law standards that would justify applying Missouri constitutional protections. Goldstein argues that this is a "blatant exercise of forum shopping." However he does not provide any authority to support the proposition that CSX is prohibited from entering the underlying judgment or engaging in supplemental proceedings in the Southern District of Illinois. In fact, other federal district courts have held that a judgment creditor may engage in supplemental proceedings in multiple districts. *See, Symons Int'l Grp., Inc v. Cont'l Cas. Co.*, No. 1:01-CV-00799-RLY-MJ, 2015 WL 1279839, at *3 (S.D. Ind. Mar. 20, 2015); *Gagan v. Monroe*, No. 2:87–CV–732, 2014 WL 5817560, at *1 (N.D.Ind. Nov.10, 2014); *Clinton v. Hendricks & Lewis, PLLC*, No. C11–1142RSL, 2012 WL 627997, at *2 (W.D.Wash. Feb.27, 2012).[1]

The Missouri Constitution affords broad protections against self-incrimination in post judgment proceedings. The Missouri Supreme Court explained that,

---

[1] In *Clinton v. Hendricks & Lewis, PLLC,* the Court noted,
> A judgment creditor may enforce a judgment through one or more supplemental collection proceedings filed anywhere the judgment debtor has property subject to levy. Each of these proceedings will seek the same relief, i.e., the collection of money or assets to satisfy the outstanding judgment. That does not, however, mean that every attempt to assert the rights of a judgment creditor is "duplicative" for purposes of the prohibition against claims splitting and/or the doctrine of res judicata. Otherwise judgment debtors who hold assets in multiple jurisdictions could force a creditor to chose one district in which to seek execution and forego any amounts that cannot be recovered in that district. Similarly, an attempt to execute on a single asset in the forum would preclude subsequent attempts to execute on other, later-identified property. Such limitations would frustrate the enforcement of federal judgments.

*Clinton v. Hendricks & Lewis*, PLLC, 2012 WL 627997, at *2 (W.D. Wash. Feb. 27, 2012).

> [I]n order to assure that the protection given by Article I, § 19, of the Missouri Constitution, is meaningful, we hold that once a witness claims the privilege afforded him under that provision, a rebuttable presumption arises that the witness' answer might tend to incriminate him, a presumption that can be rebutted by a demonstration by the party seeking the answer that such answer cannot possibly have such tendency to incriminate.

*State ex rel. Harry Shapiro, Jr., Realty & Inv. Co. v. Cloyd*, 615 S.W.2d 41, 46 (Mo. 1981) (internal quotes omitted). A judgment creditor's ability to demonstrate that a judgment debtor's "answer cannot possibly have such tendency to incrimination" seems to be a near insurmountable task. However it is readily apparent why such a standard would be appealing for the judgment debtor who is attempting to evade questioning.

Although the privilege against self-incrimination under the Missouri Constitution is not applicable in this supplemental proceeding, Goldstein may still assert the privilege against self-incrimination granted under the Fifth Amendment to the U.S. Constitution. The Fifth Amendment privilege against self-incrimination in the context of post judgment proceedings was discussed in *Martin-Trigona v. Gouletas*, 634 F.2d 354 (7th Cir. 1980). In *Martin-Trigona* the judgment debtor was held in contempt and confined to the Metropolitan Correctional Center (the federal jail in downtown Chicago) when he was found to be a recalcitrant witness in supplemental proceedings. *Id.* at 355. The Seventh Circuit upheld the district court's finding that the judgment debtor's assertion of the Fifth Amendment privilege was made in bad faith. *Id.* at 362. The Seventh Circuit noted that the privilege does apply to post judgment debtors but "the pendency of criminal proceedings does not by itself excuse a witness of his obligation to give testimony in civil proceedings…[some] nexus between the risk of criminal conviction and the

information requested must exist."[2] *Id*. at 360. Moreover, "[a] witness need not establish that an answer to a question or an explanation why an answer cannot be given will in fact incriminate. He must, however, tender some credible reason why a response would pose a real danger of incrimination, not a remote and speculative possibility." *Id.*

In this case, Goldstein argues that "the matters requested by CSX in its discovery requests seek information which might implicate him in a variety of potential crimes including, but not limited to, the following: (a) wire fraud; (b) mail fraud; (c) tax evasion; (d) bank fraud; (e) RICO liability; and (f) state law crimes." Goldstein goes on to state that he is apprehensive about CSX seeking criminal charges because "Mr. Goldstein has further been informed than at employee of CSX has remarked to several persons who do business with Mr. Goldstein's employer that 'that F****r stole money from us' and that CSX would 'bury' Goldstein." At present, Goldstein's fears fall short of "a real danger of incrimination" and more into the speculative realm. CSX's motion to compel is therefore GRANTED. However, Goldstein may reassert the Fifth Amendment privilege against self-incrimination by submitting responses to the

---

[2] The Court went on to quote *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951),
> The privilege afforded not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime. (Patricia ) *Blau v. United States*, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. *Mason v. United States*, 244 U.S. 362, 365, 37 S.Ct. 621, 622, 61 L.Ed. 1198 (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified. Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." *Temple v. Commonwealth*, 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." See *Taft, J., in Ex parte Irvine*, 74 F. 954, 960 (C.C.S.D.Ohio, 1896).

*Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980).

discovery requests to the Court for *in camera* review within 14 days. Until that period has lapsed, the Court will reserve ruling on CSX's request for attorney's fees.

**IT IS SO ORDERED.**

**DATED:** **July 21, 2015** .

> *s/Philip M. Frazier*
> **PHILIP M. FRAZIER**
> **UNITED STATES MAGISTRATE JUDGE**